88 November 8, 2023 No. 582

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. H.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

C. H.,
*Appellant.*

Multnomah County Circuit Court
22CC05817; A179698

Monica M. Herranz, Judge pro tempore.

Submitted October 10, 2023.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Egan, Presiding Judge, and Kamins, Judge, and DeVore, Senior Judge.

EGAN, P. J.

Affirmed.

**EGAN, P. J.**

Appellant seeks reversal of a judgment involuntarily committing him to the Mental Health Division of the Oregon Health Authority for up to 180 days and an order prohibiting him from possessing firearms on the basis that appellant has a mental disorder that makes him a danger to self and others. ORS 426.130; ORS 426.005(1)(f)(1) (defining a person with "mental illness"). Appellant contends that the evidence is legally insufficient to demonstrate that he has a mental disorder and that, even if he does, that evidence does not show that he presents a danger to himself or others. We conclude that the record contains clear and convincing evidence to support the trial court's determination that appellant has a mental disorder and that he was a danger to himself and others due to that mental disorder. Accordingly, we affirm.

We review the trial court's judgment for legal error. *State v. M. J. F.*, 306 Or App 544, 545-46, 472 P3d 1141 (2020). In doing so, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Id*. at 545 (internal quotation marks and citations omitted). The question under the clear and convincing standard of proof is "whether a rational factfinder could have found that it was highly probable that appellant was a danger to" self or others because of a mental disorder. *Id*. at 549 (internal quotation marks and citations omitted). Reviewing under those standards, we conclude that the record contains legally sufficient evidence to support the trial court's determination that appellant was a danger to himself and others.

Appellant has been diagnosed with Bipolar 1 disorder, severe and manic with psychotic features. Appellant has displayed grandiose and paranoid delusions for a long time as established by his medical records and the testimony of appellant's wife, sister, neighbor, and the medical examiner.

For example, with regard to appellant's danger to self, appellant checked into a hotel and brought loaded

weapons with him, claiming that he was a federal agent working with special military forces to prevent terrorist attacks.[1] Appellant refused to leave the hotel at hotel staff's requests, so staff called the police, locked the hotel down, and evacuated the floor appellant was staying on. When officers arrived, appellant told them that he had with him multiple handguns, high caliber rifles, tasers, and an EMP device to disable electronics. One officer pointed a loaded shotgun at appellant's room door. This created a situation that—as the trial court noted—nearly resulted in appellant being shot. Similarly, appellant engaged in a road rage incident where a driver brandished and pointed a weapon at him. Appellant also refuses to take medication to treat his diabetes, risk of pulmonary embolism, and bipolar disorder, because he believes he no longer has diabetes and because he claims special military personnel told him not to take mind-altering substances. The medical examiner opined that appellant's refusal to take medication could lead to a diabetic coma and a fatal pulmonary embolism, and that his delusions and mania would worsen without anti-psychotic treatment. This evidence allowed a rational factfinder to conclude that appellant's conduct "risked serious harm" to himself that is "likely to recur" absent commitment. *State v. S. S.*, 309 Or App 131, 134, 480 P3d 321 (2021); *State v. M. T.*, 308 Or App 448, 452-53, 479 P3d 541 (2021) (explaining that "[g]rave physical harm need not actually occur before a court may find a person to be * * * dangerous to [themselves]"); *State v. C. C.*, 258 Or App 727, 311 P3d 948 (2013) (person was dangerous to self based on failure to manage diabetes by refusing insulin).

With regard to appellant's danger to others, appellant has threatened immediate harm and engaged in violent and aggressive acts towards others. Appellant threatened to kill his wife, promised to kill his neighbor, and threatened to shoot his niece in the face. Testimony shows that appellant is highly likely to follow through with those threats, given the specificity of the threats and his possession of seven or eight weapons, at least one of which he keeps loaded at all times. Appellant's wife and neighbor have obtained

---

[1] Appellant was discharged from his 24-year military career several years before the facts leading up to the civil commitment hearing.

restraining orders against him due to those death threats and due to appellant's sexual comments to his neighbor's minor daughter. Appellant threatened and swung at hospital staff during his psychiatric hold, which caused hospital staff to place him in four-point restraints. Appellant compromised his wife's insulin by leaving her insulin refrigerator open while she was out of the house so that it would go bad. While it is true that appellant has not caused any physical harm to anyone, "[a]cts of violence are not required to establish that a person is dangerous; verbal threats may be sufficient if the evidence provides a foundation for predicting future behavior." *State v. J. D.*, 315 Or App 316, 321, 499 P3d 113 (2021); *see also State v. S. E.*, 313 Or App 678, 683-84, 496 P3d 1140 (2021) (explaining that trial courts are "not required to wait until appellant actually harm[s] someone before finding [them] to be dangerous"). A rational factfinder could conclude that the evidence was sufficient to conclude, by clear and convincing evidence, that the requisite degree of danger to others had been established.

Lastly, appellant adamantly denies that he has a mental illness, testified that he is unwilling to voluntarily submit to treatment, and has refused all medication to treat his mental and physical ailments except for one dose of an antipsychotic. *See* ORS 426.130(1)(a)(A) (providing that involuntary civil commitment not required where the person is voluntarily willing to participate in treatment and the court finds that the person will probably do so).

Viewed in its entirety, we conclude that the evidence is legally sufficient for the trial court to find that appellant's mental disorder would cause him to engage in behavior likely to result in physical harm to himself or to others in the near term.

Affirmed.